INC. Mr. Carter. Thank you, Your Honor. Trevor Carter for LEARNING CURVE. This case should be remanded because of the incorrect claim construction for the only claim term at issue, semicircular arcs of similar radii. The district court's claim construction that the cup and lid remain in nearly continuous contact over the extent of the semicircular arcs is an error. This error is made clear by the district court's contradictory acknowledgment that neither the claim nor the specification speaks in terms of contact. Despite acknowledging that the claim and spec do not require or even speak of contact, the court erred by that error by reading many details about contact into the claim. The court erred by requiring that the arcs must remain in nearly continuous contact. The court erred by requiring that the contact must be over the extent of the semicircular arcs. The court erred by finding that 79-80% contact between the arcs is insufficient. The court erred by finding that contact must be in nearly all places over the entire arc as opposed to all on one side. Well, some of these arguments seem to be claim construction, some of them seem to be infringement. The 79-80%, as I understood it from your brief, wasn't an issue of claim construction but rather an issue that you were arguing should have precluded summary judgment because it was a factual issue. Is that right? You seem to be mushing them all together in your argument right now. I just want to be clear about which ones are claim construction, because those were reviewed as a matter of law, and which ones are your factual allegations that you think needed to go to a jury. Very good question. In the claim construction order, there were limitations placed on the consideration. The court made clear that she was further construing the claim to add additional limitations. For example, the 79-80% requirement, that that was not enough to meet this limitation, the district court said that was done as a matter of claim construction. Where did she say that? Where did she say that? For some reason I had appreciated that it was the result of her determination of summary judgment and not infringement, and not as part of the claim construction order, but I may have misinterpreted it. I will find that for you. Page 72. At the top of that page, so this is page 6 of document 180 of the April 12, 2011 opinion. Page 72 is in the section of the summary judgment order entitled, Evidence of the Accused Product in Nearly Continuous Contact. That sounds awfully factual, right? She's talking about evidence. Where exactly do you get the impression that this was a matter of claim construction? In the top paragraph. Well, but this is the summary judgment of non-infringement decision that you're reading from, right? Correct. And she says, in other words, the question of degree, whether 80% contact is nearly continuous, was a dispute about the proper scope of the claim term. Whether the term similar radii can be read so broadly as to allow ARCs having only 80% contact or less is not a jury question. So in her summary judgment, and we are saying that the fact she continued to do claim construction in the summary judgment is wrong by itself. We're just pointing out that what it is that was further put into the definition on details about contact. And finally, the court compounded the error of reading contact into the claim by saying that a snug fit between the ARCs was required. It is clear in this case that the district court's claim construction is wrong based on the district court's own acknowledgment that neither the claim nor the specification speaks in terms of contact. Now what is the intrinsic evidence in this case? The intrinsic evidence in this case, we start with Claim 1. Claim 1, as the district court found, does not speak in terms of contact. This claim limitation, semi-circular arcs of similar radii, is addressed in the specification in reference to figures 4 and 5. Doesn't contact go to the heart of how similar the radii have to be? Because obviously if they were of identical radii, the lid wouldn't fit on top of the cup. So similar radii, why isn't that going right to the heart of just how close, and of course if the radii had a large disparity, the top of the lid would fall off the top of the cup. And this all goes to the notion of the snap over fit. How similar do they have to be? Well, they have to be in nearly continuous contact. That's what holds the lid on. Why is that wrong? Well, there's nothing in the specification or the prosecution history speaking to any of that. But you have to define what similar radii mean in the context of this claim. Because quite frankly, if you gave semi-circular arcs of similar radii to a jury, I'm not sure what they would make of that without a construction of some sort. Similar radii, how similar? Well, nearly continuous contact. Maybe she erred in saying 80% isn't nearly continuous contact, but you're framing your argument as the contact is the part that was all wrong. And I guess I don't understand what the alternative definition of this claim term would be. Well, first, we don't believe that a claim construction is necessary. No, but I don't agree with that. I just think it's a very confusing term otherwise. I just don't think a jury is... I mean, there are things that you give to a jury, like the meaning of the word about. Or maybe you want to say the meaning of the word similar. That's why she shouldn't put a 70% or an 80% limit on it. But semi-circular arcs of similar radii, while this is not a complex technology, I grant you, it's a strange term for the average layperson. I think semi-circular arcs, it's something that you learn about very early in school. And radii, that's something that you learn about very early in school. I think that those are terms that can be readily understood by a jury. What is a semi-circular arc? What are radii? And this court, for example, in the Horner case, this is a case I wanted to mention because it is not cited in our briefing from February of 2012, looking at the term attached to said pad and flexible pad found that plain and ordinary meaning was the definition. It did not need a definition. And at the end it says the task of determining the degree of flexibility, the degree of rigidity. Which case is this? It is... It sounds familiar to me. Was I on it? Yes, you were. Oh, I did. Thorner v. Soney. I don't have the third side. It's 2012 Westlaw 280657. And at the end, the final paragraph, the task of determining the degree of flexibility, the degree of rigidity that amounts to semi-rigid is part of the infringement analysis, not part of the deconstruction. And we believe this is similar in this case, that a term such as similar radii, this is an issue for a jury, particularly when you look at the evidence. The district court in this case adapted our facts. And those facts were expert evidence using CT scans that were explained in detail how that was done and the cross-sections taken and that the overall amount of contact on average was 79 to 80%. How did your expert come up with that number? What test did he do to determine it was 79 to 80%? He did a CT scan test that is described in his... Are those the photographs in your brief? Those seem to be photographs. Yes, there are several photographs and more photographs referenced in the record. In particular, I think the photograph I was referring to is on page 15. And I think that photograph and then the scan is repeated a little later in the brief, right? Page... 17. That was later than that. Okay. Page 17, is that the... 42 is the other page. Is 42, is that one of your scans at the top on the right-hand side? Yes, it is, in comparison to the prior art that Munchkin made, admissions... But that's a scan of the accused, not a scan of the prior art. Correct, at the top. But I guess, here's my question. Look at that one on the top. The micro scan shows almost no contact at all. Maybe, in fact, the only point of contact is the right-hand downward-sloping side. So how do you get to a conclusion of 79 to 80% contact? Because in neither image, the cross-section picture or the scan, do I see any contact? I mean, except maybe that one little spot. I mean, I'm wondering how your expert came up with the 79 to 80% number. This is in the appendix, and I can provide the appendix site if you like when I come back up on rebuttal. But he went through and detailed how he did the process... Do you see what I'm talking about in this picture? I do. There's daylight between those two different parts at almost every point. I do, but he's also looking at the picture and I also... By the time this is copied and copied and put into this brief, I think that what we know is that the district court adopted our facts. And Munchkin, in its red brief, spends a lot of time disputing those facts. But that dispute about the facts,  is not the subject of the appeal. What we have is the expert... So you have to accept as true that there's 79 to 80% contact for purposes of this appeal, is what you're saying? Correct. I don't think that makes any darn sense. I got it. Because that is what the district court adopted. And that was not questioned or addressed in that opinion. Would it be your position that the semi-circular arcs of similar radii limitation could be satisfied even if there were no contact across the two arcs? As long as the two arcs had the same radius of curvature? Yes. So contact is irrelevant except to the extent that there obviously has to be some contact in order to form a seal. And that contact, you say, is provided by the lip on the inside and the outside of the cover and the main body respectively, correct? Exactly. That's exactly right. The seal does not have to be formed by the semi-circular arcs of similar radii. And you think that's where the district judge missed the boat because she assumed that the seal had to be affected by the groove and dome fit? I think that's part of it. I think that the district court judge looked for a purpose was trying to find a purpose for semi-circular arcs of similar radii outside of the claim. The claim speaks in terms of sealing and speaks in terms of the interlocking features you addressed, Judge Bryson. But if you really didn't have any contact at all between the two semi-circular arcs, it's a little... It is kind of hard to understand what the purpose of those semi-circular similar or equal semi-circular arcs would be, is it not? They need to be there to help align within the purpose of Claim 1. Claim 1 is looking at sealing via the interlocking features. So alignment is, as you see it, really the main function of the groove and dome congruence. Correct. I would like to reserve the balance of my time if there are any more questions. We will give you a couple of minutes for rebuttal since we've used a lot of your time to question it. Let's hear from Ms. Nagin. May it please the Court, my name is Josephine Bankers, I'm here with Quarles and Brady and I'm here on behalf of Defendant Appelli Munchkin, Inc. As Attorney Carter acknowledged, this learning curve's main issue with the District Court's decision is its disagreement with the Claim Construction Order. It is Munchkin's position that the Claim Construction Order in the District Court got it... was correct. There are two important points to the District Court's construction. It wasn't all about contact. While the construction talks about nearly continuous contact, the Court explicitly said there's two important points. Number one, that they closely follow, such that they touch, but more importantly, that the reason they do that is because the similar radii are of similar size. But you could have, could you not, similar radii which are simply, I mean, I don't know if you can see my hands very well here, but you could have similar radii for the curves, even though the curves didn't touch, correct? I don't believe so. I think that the proper construction... I'm trying to do my best to have similar radii, but I'm not sure I'm doing a good job. But let's assume that I'm doing an excellent job of high school algebra teacher's ability to draw an arc. These two arcs are exactly the same radius of curvature, but the structure of the device keeps them apart at all points except for the point at which the lip has an interference fit with the lip on the cup. I think it needs to be closer, and I think that's supported by the patent. But why? Okay, good. The only guidance we have as to this term of degree, which is a subjective term, what does it mean to be similar, is with respect to figure 15 in the patent, which shows back-to-back arcs. And the only evidence as to why they should be back-to-back is that said by... When you say back-to-back, you mean arcs in full context. Right. Is that given by Munchkin's experts, so that they follow closely and have a snug fit? And that's what the district court found persuasive. Other than the figure, where in the patent do you find the notion that there is a snug fit between the groove and the dome? Figure 15 is the main guidance of this snug fit. And it's the only place where the patentee chose to give any guidance as to this term of degree. Right. Now, I don't think the word snug fit... Does it appear in the patent? No. So, snug fit is an extrapolation from the description of the device. And in fact, Learning Curve's expert would seem to agree. In the first case, he testified that Munchkin's prior cup, not the accused cup in this case, met this claim limitation because the alleged semicircular arcs matched together. And have no large gaps between them. So that's further support. Both experts agreed essentially with this construction. This isn't directly pertinent to the precise issue that's before us. I understand that. Does your device, which is threaded and essentially screws on, does that have what the patent calls a snap fit? Munchkin? No. I'm curious, then, why you didn't pursue that argument in the district court or in this court because that would have seemed to have been perhaps a more direct course, if you're right, that you don't have such a thing that's disputed, I think, by your opposing counsel. But if you don't, isn't that an easier way to get to where you want to go? Munchkin did, actually, move for summary judgment on six separate claim elements. The briefing is extensive. There's hundreds of pages of briefs. But you haven't pursued that here? No, Munchkin didn't affirmatively ask that this court look at all of the issues on summary judgment. And definitely not snap over? I mean, this is the difference between that's Munchkin's position. Yeah, that this cup is very different. We did raise it below. The judge didn't reach all of those issues at the district court. She didn't sort through all of those proposed findings of fact. There were motions to strike. There were motions to exclude expert testimony. It would have taken, you know, perhaps hundreds of pages of briefing before this court to brief every alternative ground that this court could in the first instance decide summary judgment. And I don't think there's any precedent requiring us to ask you guys to affirm on every single ground. It just struck me that we have this rather frankly the claim construction requiring the creation of a new term and then making a determination that that new term is not satisfied by a percentage determination is itself a rather long way around the barn kind of approach to the question of infringement. If there's a much shorter route, I'm kind of surprised that both you and perhaps the judge didn't go for it. And that leads me to wonder if there was a problem with it. I would disagree. I think there's several different routes that the district judge could have taken. Just out of curiosity, I don't want to belabor this point, but just out of curiosity, when you screw on your lid, is there some portion where it forgets the notion that you have to make an audible sound, but is there some portion at which it sort of engages in a snapping sort of way? Like, you know, you could have a screw and then you have to push down and you make a medicine bottle, a child-proofing cap, you know, whatever. Is there some point at which you push down and it sort of pops into place, moving audibly, in terms of the way it functions? No. And in fact, this evidence is at the district court, the alleged lifts that Learning Curve asserted were creating a snap fit on Munchkin's cup were less than, I think, one-tenth the width of a piece of paper. They were... And Munchkin disputed that they were there. But they're very small. I think they're .2 millimeters or something like that. The two lifts that are indicated in figures four and five as numbers 46 and 48, they're only .2 millimeters. That's really small. Right. Well, and Munchkin disagrees that there's any lifts on its cup. And that's all in the briefing on summary judgment before the district court. Okay. All right. Go ahead. All right. So I guess the important point is in this claim term, there's two aspects to it. There's not just the semicircular shape, but there's also the similar radii concept. Radii is a unit of measurement. And as the district court recognized, the only way that two radii can be similar is to be similar in size. Now, Learning Curve asserts that its evidence was sufficient to survive summary judgment, citing to its 79-80% theory. First of all, I agree with you, Judge Moore, that the images do not show any contact between them. And again, we moved to a case where the testimony was late. It was very flawed. Even the district court called it into question in her opinion, where in a parenthetical she said, Dr. Oswald asserts that in nine cross-sections there was 100% contact. But tellingly, he never included any of those cross-sections with his submission. Putting that aside, even if there is the degree of contact that he asserts doesn't show that the semicircles are of a similar size. And it also doesn't show that the accused cups come together and function in the same way as the patented cup. If you just look at the pictures, for example, on page 47 of Munchkin's brief, there's more of those micrograph images, and you see the curve on the cup is markedly smaller than the curve on the lid. So those are not similar radii. And this is something that's evident just from the pictures. It was not my understanding that that was the ground on which the district court decided the case. I understood her to have decided the case on the ground  continuous contact. I think she said both, and she emphasized it in her decision on the motion for reconsideration. She said that it doesn't show continuous contact. Right. Continuous contact is point one. And also, the curves have very different sizes. Radii. She emphasized that the important point of her claim construction was that these radii are of different sizes, and you can see that just from the picture. And indeed, Dr. Shedd, Munchkin's expert, who's the only one who actually measured the size of the actual radii, found that the lid is 40% or 39% larger than the cup rim. Well, perhaps you can help me. I can't put my finger on that part of the reconsideration order. I see her discussion of the continuous saying that the continuous contact was not satisfied, and that's what semicircular arcs of similar radii means, but I'm just not seeing the place where she said. 76? Okay. 876? Oh, I see. Right, she agrees that, she says that it reflects a substantial difference in size between the respective radii. And I think what you have here is you don't have evidence in the record that would enable a jury to find these are semicircular arcs of similar radii, which is two separate requirements. So you're reading this as an alternative ground of decision with respect to the radii limitation, if I understand you. In other words, I had read this as part of the continuous contact analysis, but you're saying no, you really can and should read it as a separate basis on which, regardless of the amount of contact, she says this reflects either the continuous contact or the lack of continuous contact reflects a difference in radii, but the fact that there is a difference in radii, which is her conclusion, is itself a separate ground whether there's any contact at all or not. I think that's right, and there is no evidence of size, and in fact, if you look at the accused product, had the radii been of similar size, the way they're put together, there would have to necessarily have been contact for them to fit together. So the absence of the contact shows the different radii, which is a designed-in feature. In the accused product, the rim on the cup is smaller as Learning Curve acknowledges to make room for the threads. It's not an imperfection as you would see in the prior art where there's some tiny little gaps at the top, and really what you're looking at is a difference in shape as opposed to a difference in the radii. Now there's an interference fit, I take it, quite independent of the threads in the accused device, correct, so that if you strip off the threads, as I guess was done, the lid will still stay on. Right, and in fact, Dr. Oswald stripped away not just the threads, he stripped away almost the entire upper arc, showing, if anything, that you don't need the arc, but you can't just get rid of a limitation and a claim saying, oh well, it turns out maybe we didn't need it anyway. You're saying, if I understand it correctly, that yes, there's an interference fit, but it is not an interference fit that would constitute a snap because there isn't a compression and then a return to the previous state, which is what I understand you to be saying is necessary for a snap fit, as opposed to an interference fit where there's just pressure. Right, that's what the district court found, that you have to have this deflection and recovery, and that's another ground to move for summary judgment on. Learning Curves expert didn't show any deflection and recovery in an alleged snap fit. But, right, Munchkin agrees that if you press it in there, it's sort of like a cork in a bottle, what you would refer to as a press fit. In conclusion, it's Munchkin's position that the judgment should be affirmed, there is no evidence of doctrine of equivalence, there's no evidence of infringement, and the claims construction are correct. Thank you. Mr. Carter. If you could give Mr. Carter two seconds. Thank you, Your Honor. I wanted to turn back to the intrinsic evidence that we have here. The discussion of semicircular arcs of similar radii was in reference to figures four and five. Those figures show an imperfect semicircular arc based on lip 48 of rim 38 that projects toward the rim. The specification doesn't speak in terms of contact, those figures, and that's the only place this limitation is used in the claim, the figures don't show contact, the specification doesn't discuss contact, let alone the amount or extent of contact. That's the intrinsic evidence. Figure 15 does show, and that's what it is that Munchkin relies on, it does show the arcs lining up, but this court's law is very clear, and I'll quote from the anchor wall case in page 30 of our blue brief, page 10 of our gray brief. The mere fact that the patent drawings depict a particular embodiment of the patent does not serve to limit the claims to that specific configuration. If this court reads in the contact limitation, if this court affirms a different district court claim construction, this court is making new law that is contradictory with Phillips. What do you say to the argument that based on, for example, the statement of the district court at A-76, that the district court made a determination that the radii were in fact in the accused device were in fact quite different for the two arcs? That was not an independent reason and if I could point you in the paragraph where that appears, starting with the second sentence, the court says, applying the requirement that the arcs be in nearly continuous contact, the accused products fall far short of this. Using plainest numbers and figures, one-fifth of the extent of the arcs is not in contact all on one side of the arcs. This reflects a substantial difference in size between the respective radii. So the court was using contact as the determination of whether the arcs were of similar radii. So it wasn't an independent basis of I alone am looking at the radii. When I first read it, I read it the way you have read it, but now that I reread it with the assistance of your opposing counsel, I have to say that it sort of depends on what you reflect, doesn't it? I mean, it may be that she may be saying that's simply a consequence of the fact that they are arcs of different size, in which case if that's what she means, that does sound like an independent ground for ruling, doesn't it? Well, I think that your initial reading was correct because when you look at the first sentence that I read, the second sentence of the paragraph, she starts out saying, applying the requirement of that the arcs be a nearly continuous contact. She makes clear that what it is she's discussing in this paragraph, she's applying that requirement based on amount of contact. Thank you. Did you have one more quick point that you wanted to make? I used up most of your time on my question. Yes, absolutely. On the factual issues, we mentioned the Thorner case. I also want to point out a couple of cases that go to shapes from this court. Whether that results in factual issues. In our blue brief, page 53, the Cordis case that was talking about weld spots on a cylinder. In that case, there wasn't even a term such as similar or substantially or general. That was just looking at a cylinder. The weld spots on that led to a factual determination to be made by a jury. In our blue brief on page 57, the optical disk case talking about a ramp trailing edge versus a double step trailing edge. Once again, shape. Thank you. Thank you. We thank both counsel. The case is submitted.